IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA   )
                                     ) No. 25 CR 573
    v.                            )
                                     ) Magistrate Judge Keri Holleb-Hotaling
CARLOS GONZALEZ-LEON    )

LIMITED MEMORANDUM CONCERNING
CERTAIN BOND CONSIDERATIONS

Defendant CARLOS GONZALEZ-LEON, by the FEDERAL DEFENDER

PROGRAM and its attorney DANIEL J. HESLER, submits this limited

memorandum concerning the bond decision in this case. This memo addresses his

guidelines and immigration status. Defendant further states as follows:

## I.    Procedural Background

On September 16, 2025, defendant Carlos Augusto Gonzalez-Lopez was

arrested and charged by complaint with the illegal reentry, in violation of 8 USC

§1326. The statutory maximum for that offense is two years.

On that same date, Mr. Gonzalez appeared before this Court for an initial

appearance. The government is seeking detention, and this Court set a detention

hearing for September 18, 2025, at 1:00.

1

## II. What the complaint says, and other history

The complaint in this case lays out very specific allegations concerning Mr. Gonzalez's history, including concerning his criminal history. Pretrial Services has prepared a report providing some additional information. In a timeline/table format, the complaint alleges the following, in summary:

| Date | Event |
|------|-------|
| 1977 | Carlos Gonzalez-Leon (henceforth "CGL") born in Mexico |
| 6/27/2013 | CGL enters US |
| 6/28/2013 | CGL arrested in Texas |
| 6/29/2013 | CGL removed to Mexico |
| 7/8/2013 | CGL enters US |
| 7/9/2013 | CGL is convicted of a count under 8 USC 1325(a) and is sentenced to 20 days custody. *(Note that 8 USC §1325(a) is titled "illegal entry" and is a misdemeanor with a 6 month maximum.)* |
| 10/2/2013 | From Pretrial report; Misdemeanor conviction for domestic assault, from conduct occurring on 7/28/2008, resulting in a sentence of 60 days imprisonment. |
| 10/4/2013 | CGL is removed to Mexico |
| 2/27/2022 | CGL is found in Texas |
| 2/27/2022 | CGL is expelled from the US |
| July, 2025 | CGL obtains an Illinois driver's license, using his full name and an address on Chippewa Drive in Elgin |
| 9/12/2025 | CGL is seen by surveillance agents leaving the Chippewa Drive address, and putting gas into a different car |
| 9/16/2025 | CGL is arrested in this case at the Chippewa Drive address |

### III.    How the sentencing guidelines might operate in this case

Assuming for the purposes of this argument that the complaint and report accurately recounts Mr. Gonzalez's history, we have enough information to calculate what Mr. Gonzalez's guidelines would be if he were convicted in the present case.

Guidelines calculations involve the computation of an offense level and a criminal history score. As to the offense level, illegal reentry convictions fall under USSG §2L1.2. All illegal reentry cases have a base offense level of 8.[1] *See* §2L1.2(a). Additional offense levels are added based on 1) prior illegal entry and reentry convictions (*see* §2L1.2(b)(1)); 2) other convictions sustained prior to the defendant's first deportation or removal (*see* §2L1.2(b)(2)); and 3) other convictions sustained after the defendant's first deportation or removal (*see* §2L1.2(b)(3)).

Under §2L2.1(b)(1), a defendant receives a 4-level increase if they have a prior illegal reentry case, or a 2-level increase if they have two or more convictions for misdemeanors under 8 USC §1325(a). The complaint says that "On or about July 9, 2013, GONZALEZ-LEON was convicted in the Southern District of

---

[1] Exhibit A is a subset of the guidelines manual, with the pages potentially relevant to this case.

*illegally reentering* the United States, in violation of Title 8, United States Code, Section 1325(a), and sentenced to 20 days' imprisonment." Complaint at 2 (emphasis added). That seems odd; if this conviction was for illegal *reentry,* it would not be a conviction under 8 U.S.C. §1325(a), which covers illegal *entry* and is a misdemeanor. Illegal *reentry* is a felony, and falls under 8 U.S.C. §1326. It is likely that the word "reentry" in the quoted sentence is a typo, and that this was a misdemeanor illegal entry conviction under §1325(a). It would be unusual to receive a 20-day sentence on a felony, and to receive it one day after the offense was committed, and to have the conviction and sentencing occur on the same day. So, that suggests that Mr. Gonzalez does not have a prior illegal reentry conviction, and also does not have "two or more" prior misdemeanor convictions under §1325. He has one. As such, he would receive no increase under §2L1.2(b)(1).

Next, there is no allegation that Mr. Gonzalez has any convictions that occurred before he was first ordered removed or deported from the United States (*i.e.,* 6/29/2013). Thus, he does not receive any increase under §2L1.2(b)(2).

Next, if Mr. Gonzalez was convicted of a misdemeanor that resulted in a 60-day sentence in October of 2013, that also would not result in any guidelines increase under §2L1.2(b)(3). USSG §2L1.2(b)(3) provides for increased offense levels for felonies, or for "three or more" convictions for misdemeanors for crimes

of violence or drug trafficking offenses. That would not apply here. It is one
conviction, and a misdemeanor.

Thus, it would seem that Mr. Gonzalez might wind up with a total offense
level of 8 prior to the operation of any reduction for acceptance of responsibility
under §3E1.1. That section provides for a 2-level reduction for defendants who
admit their guilt and acceptance responsibility for their actions, including by
pleading guilty. That seems likely to apply here, resulting in a total offense level of
6.

Regarding Mr. Gonzalez's possible criminal history category, under USSG
§4A1.1, sentences under 60 days receive one criminal history point. Sentences of
at least 60 days up to 13 months receive 2 criminal history points. Mr. Gonzalez
would seem to have one of each of those. See §4A1.1. That would give Mr.
Gonzalez a total of 3 criminal history points, placing him into criminal history
category II. Even that is a conservative calculation, because it is not completely
clear that any of these criminal history points actually count. Under §4A1.2(e),
convictions resulting in sentences under 13 months are countable only if they were
imposed within 10 years of the defendant's commencement of the instant offense.
In this case, we know that his offense of illegal reentry began sometime after

February 27, 2022 (when Mr. Gonzalez was last expelled from the US..) and July of 2025 (when he obtained an Illinois driver's license).

Thus, using the sentencing table from §5, part A, a total offense level of 6 in a criminal history category of II results in guidelines range of 1 to 7 months. If he is in criminal history category I, the range would be 0 to 6 months. Moreover, the 1-7 month range falls in Zone B of the guidelines, which provide alternatives to actual incarceration. *See* USSG §5C1.1.

Finally, for completeness, at any sentencing in this case, the defense might point out that there may be some near-misses that essentially inflate Mr. Gonzalez's guidelines. If his 2013 convictions count, it is just barely. Also, the 2013 assault case was for conduct from 2008. Moreover, it is quite conceivable that the 60-day sentence in the 2013 case was substantially influenced by the fact that Mr. Gonzalez had an ICE detainer, which may have essentially forced a court to keep Mr. Gonzalez in custody and impose incarceration in circumstances when it otherwise might not have. Finally, it should be noted that the 60 days was imposed on October 2, 2013, and he was deported on October 4. Thus, this was a "time considered served" sentence. Sentences involving time already served and nothing more do not necessarily carry the same probative weight as other convictions and sentences. One reason for this is that this sentence does not

6

necessarily imply that the court might not have imposed less time if it could have, but obviously it couldn't. Second, although guilty pleas generally signify the defendant's actual guilt, that is not as true for "time considered served" pleas. Faced with an offer of "plead guilty and you get out," innocent people might also plead guilty. Legally the convictions are just as valid as any others, and probably most such defendants actually are guilty. But the confidence level that such convictions actually mean that the defendant was guilty is significantly reduced.

## IV. How these possible sentencing guidelines might affect the bond decision in this case

In a case like this where the government is seeking Mr. Gonzalez's detention based solely on the basis that he might be a flight risk, the question is whether release on conditions can reasonably assure his appearance. The weight of the evidence is a factor to be considered under 18 U.S.C. §4142(g)(2), but if one thinks about it, the existence of that as a factor ties into the likelihood of incarceration. Defendants who are facing long prison sentences and overwhelming evidence have a considerable incentive to flee. This case presents the opposite scenario. Although the guidelines are simply advisory, they nevertheless represent a reasonable benchmark for what might be the end result of a case. In this case, the guidelines analysis above tells us that there is a strong possibility that Mr. Gonzalez may not

actually be facing any punitive incarceration as a result of this case. This factor separates this case from probably 95% of the cases this Court sees, and an even higher proportion of cases in which the government is seeking detention. If Mr. Gonzalez is ordered released on bond, he has a much stronger incentive to come to court as directed than to flee. Looked at another way, given that almost no felony cases in this district are disposed of in less than five months, a decision to detain Mr. Gonzalez at this point would come close to dictating that the sentencing outcome in this case will not be below the guidelines or even anywhere near the low end of the guidelines. Instead, Mr. Gonzalez might have already served close to a low-end guidelines sentence by the time of his arraignment.

Perhaps that viewpoint is more result-driven than this Court wishes to be. It nevertheless remains that because it appears that Mr. Gonzalez might avoid any criminal incarceration whatsoever by strictly complying with any bond conditions this Court imposes, his incentive to flee is considerably less than it would be for most other defendants this Court encounters, including other illegal reentry defendants.

## V. The existence of a possible ICE detainer does not change this analysis.

It is likely that there is an ICE detainer on Mr. Gonzalez. The defense has two comments to make about that. First, the existence of such a detainer does not change this Court's obligations under the BRA. If this Court might not detain Mr. Gonzalez but ICE would, or vice versa, each court still has the obligation to follow its own standards. If Mr. Gonzalez does not appear to be a danger to the community or a risk of flight, this Court should order his release.

Second, the risk that ICE could potentially deport him is, similarly, ICE's business, not this Court. Such a possibility is not a legitimate consideration in this Court, because flight (as that is understood by the BRA) must be voluntary. *See, e.g., United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a serious risk that [the defendant] will flee.");*United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) ("[T]he risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition."); *United States v. Marinez-Patino*, 2011 WL 902466, at *4 (N.D. Ill. Mar. 14, 2011) ("[R]isk of *involuntary* removal pursuant to an ICE detainer does not create a serious risk that a defendant will *voluntarily* flee. . . . To show that there is a serious risk that a defendant will flee, the government must show that the

9

defendant would seek to leave through some type of voluntary act."); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) ("A risk of involuntary removal does not, by itself, establish 'a serious risk that such person will flee,' such that the Government may seek pre-trial detention pursuant to § 3142(f)(2)(A)."); *United States v. Figueroa-Alvarez*, 2023 WL 4315592, at *6 (D. Idaho July 3, 2023) ("Alien defendants who illegally enter this country, or illegally re-enter this country after removal, do so for many reasons: to flee political persecution in their home country, to flee drug-related violence in their home country, to pursue greater economic opportunity in this country, and to follow friends or family members who already live in this country, just to name a few. But they share a common trait: they voluntarily chose to come to this country and stay here. Presuming that they are any more likely than nonalien defendants to leave this country or the jurisdiction to avoid prosecution—just because they came here from another country—is misplaced. Critically, this presumption is not supported by empirical proof. . . . [A]lien defendants granted pretrial release were less likely to fail to appear or violate conditions of release than non-alien defendants.").

**Conclusion**

The defense will make further arguments at Court. These rather technical arguments seemed suitable for briefing. But in this case, Mr. Gonzalez's guidelines are likely to be extremely low in this case, so much so that for him to be detained would likely predetermine that what ultimate sentence was.

For all these reasons, defendant Carlos Gonzalez will ask this Court to order his release on bond in this case, subject to whatever conditions the Court deems appropriate.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy,
Executive Director

By: *s/ Daniel J. Hesler*
    Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8347

## <u>CERTIFICATE OF SERVICE</u>

The undersigned,<u> Daniel J. Hesler </u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## <u>LIMITED MEMORANDUM CONCERNING</u><br><u>CERTAIN BOND CONSIDERATIONS</u>

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>September 18, 2025</u>, to counsel/parties that are non-ECF filers.

FEDERAL DEFENDER PROGRAM
John F. Murphy,
Executive Director

By: <u>*s/ Daniel J. Hesler*</u>
        Daniel J. Hesler

DANIEL J. HESLER
Federal Defender Program
55 E. Monroe, Suite 2800
Chicago, Illinois 60603
(312) 621-8300

# EXHIBIT A

**§2L1.2**

condition; or guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements). If subsection (b)(6) applies solely on the basis of conduct related to fleeing from a law enforcement officer, do not apply an adjustment from §3C1.2 (Reckless Endangerment During Flight). Additionally, do not apply the adjustment in subsection (b)(6) if the only reckless conduct that created a substantial risk of death or serious bodily injury is conduct for which the defendant received an enhancement under subsection (b)(5).

4. **Application of Subsection (b)(7) to Conduct Constituting Criminal Sexual Abuse.—** Consistent with Application Note 1(M) of §1B1.1 (Application Instructions), "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law.

5. **Inapplicability of §3A1.3.—**If an enhancement under subsection (b)(8)(A) applies, do not apply §3A1.3 (Restraint of Victim).

6. **Interaction with §3B1.1.—**For the purposes of §3B1.1 (Aggravating Role), the aliens smuggled, transported, or harbored are not considered participants unless they actively assisted in the smuggling, transporting, or harboring of others. In large scale smuggling, transporting, or harboring cases, an additional adjustment from §3B1.1 typically will apply.

7. **Upward Departure Provisions.—**An upward departure may be warranted in any of the following cases:

   (A) The defendant smuggled, transported, or harbored an alien knowing that the alien intended to enter the United States to engage in subversive activity, drug trafficking, or other serious criminal behavior.

   (B) The defendant smuggled, transported, or harbored an alien the defendant knew was inadmissible for reasons of security and related grounds, as set forth under 8 U.S.C. § 1182(a)(3).

   (C) The offense involved substantially more than 100 aliens.

**Background:** This section includes the most serious immigration offenses covered under the Immigration Reform and Control Act of 1986.

| | |
|---|---|
| *Historical Note* | Effective November 1, 1987. Amended effective January 15, 1988 (amendments 35, 36, and 37); November 1, 1989 (amendment 192); November 1, 1990 (amendment 336); November 1, 1991 (amendment 375); November 1, 1992 (amendment 450); May 1, 1997 (amendment 543); November 1, 1997 (amendment 561); November 1, 2006 (amendments 686 and 692); November 1, 2007 (amendment 702); November 1, 2009 (amendment 730); November 1, 2014 (amendment 785); November 1, 2016 (amendment 802); November 1, 2018 (amendment 805). |

---

### §2L1.2. Unlawfully Entering or Remaining in the United States

    (a)   Base Offense Level: 8

§2L1.2

(b) Specific Offense Characteristics

    (1) (Apply the Greater) If the defendant committed the instant offense after sustaining—

        (A) a conviction for a felony that is an illegal reentry offense, increase by **4** levels; or

        (B) two or more convictions for misdemeanors under 8 U.S.C. § 1325(a), increase by **2** levels.

    (2) (Apply the Greatest) If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in—

        (A) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by **10** levels;

        (B) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by **8** levels;

        (C) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by **6** levels;

        (D) a conviction for any other felony offense (other than an illegal reentry offense), increase by **4** levels; or

        (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **2** levels.

    (3) (Apply the Greatest) If, after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in—

        (A) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more, increase by **10** levels;

        (B) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by **8** levels;

§2L1.2

> (C) a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceeded one year and one month, increase by **6** levels;
>
> (D) a conviction for any other felony offense (other than an illegal reentry offense), increase by **4** levels; or
>
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **2** levels.

#### Commentary

**Statutory Provisions:** 8 U.S.C. § 1253, § 1325(a) (second or subsequent offense only), § 1326. For additional statutory provision(s), *see* Appendix A (Statutory Index).

**Application Notes:**

1.  **In General.—**

    (A) **"Ordered Deported or Ordered Removed from the United States for the First Time".**—For purposes of this guideline, a defendant shall be considered "ordered deported or ordered removed from the United States" if the defendant was ordered deported or ordered removed from the United States based on a final order of exclusion, deportation, or removal, regardless of whether the order was in response to a conviction. "For the first time" refers to the first time the defendant was ever the subject of such an order.

    (B) **Offenses Committed Prior to Age Eighteen.**—Subsections (b)(1), (b)(2), and (b)(3) do not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.

2.  **Definitions.**—For purposes of this guideline:

    "*Crime of violence*" means any of the following offenses under federal, state, or local law: murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c), or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another. "Forcible sex offense" includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (A) an offense described in 18 U.S.C. § 2241(c) or (B) an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States. "Robbery" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase "actual or threatened force" refers to force that is sufficient to overcome a victim's resistance. "Extortion" is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury.

§2L1.2

"*Drug trafficking offense*" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

"*Felony*" means any federal, state, or local offense punishable by imprisonment for a term exceeding one year.

"*Illegal reentry offense*" means (A) an offense under 8 U.S.C. § 1253 or § 1326, or (B) a second or subsequent offense under 8 U.S.C. § 1325(a).

"*Misdemeanor*" means any federal, state, or local offense punishable by a term of imprisonment of one year or less.

"*Sentence imposed*" has the meaning given the term "sentence of imprisonment" in Application Note 2 and subsection (b) of §4A1.2 (Definitions and Instructions for Computing Criminal History). The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release, regardless of when the revocation occurred.

3.    **Criminal History Points.**—For purposes of applying subsections (b)(1), (b)(2), and (b)(3), use only those convictions that receive criminal history points under §4A1.1(a), (b), or (c). In addition, for purposes of subsections (b)(1)(B), (b)(2)(E), and (b)(3)(E), use only those convictions that are counted separately under §4A1.2(a)(2).

      A conviction taken into account under subsection (b)(1), (b)(2), or (b)(3) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History).

4.    **Cases in Which Sentences for An Illegal Reentry Offense and Another Felony Offense were Imposed at the Same Time.**—There may be cases in which the sentences for an illegal reentry offense and another felony offense were imposed at the same time and treated as a single sentence for purposes of calculating the criminal history score under §4A1.1(a), (b), and (c). In such a case, use the illegal reentry offense in determining the appropriate enhancement under subsection (b)(1), if it independently would have received criminal history points. In addition, use the prior sentence for the other felony offense in determining the appropriate enhancement under subsection (b)(2) or (b)(3), as appropriate, if it independently would have received criminal history points.

5.    **Cases in Which the Criminal Conduct Underlying a Prior Conviction Occurred Both Before and After the Defendant Was First Ordered Deported or Ordered Removed.**—There may be cases in which the criminal conduct underlying a prior conviction occurred both before and after the defendant was ordered deported or ordered removed from the United States for the first time. For purposes of subsections (b)(2) and (b)(3), count such a conviction only under subsection (b)(2).

6.    **Departure Based on Seriousness of a Prior Offense.**—There may be cases in which the offense level provided by an enhancement in subsection (b)(2) or (b)(3) substantially understates or overstates the seriousness of the conduct underlying the prior offense, because (A) the length of the sentence imposed does not reflect the seriousness of the prior offense; (B) the prior conviction is too remote to receive criminal history points (*see* §4A1.2(e)); or (C) the time actually served was substantially less than the length of the sentence imposed for the prior offense. In such a case, a departure may be warranted.

§3E1.1

# PART E — ACCEPTANCE OF RESPONSIBILITY

## §3E1.1.    Acceptance of Responsibility

(a)  If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)  If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level. The term *"preparing for trial"* means substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial. "Preparing for trial" is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists. Preparations for pretrial proceedings (such as litigation related to a charging document, discovery motions, and suppression motions) ordinarily are not considered "preparing for trial" under this subsection. Post-conviction matters (such as sentencing objections, appeal waivers, and related issues) are not considered "preparing for trial."

**Commentary**

**Application Notes:**

1.   In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(A)   truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous;

(B)   voluntary termination or withdrawal from criminal conduct or associations;

(C)   voluntary payment of restitution prior to adjudication of guilt;

§3E1.1

(D)   voluntary surrender to authorities promptly after commission of the offense;

(E)   voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(F)   voluntary resignation from the office or position held during the commission of the offense;

(G)   post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment); and

(H)   the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

2.   This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

3.   Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (*see* Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

4.   Conduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply.

5.   The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

6.   Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease in offense level for a defendant at offense level 16 or greater prior to the operation of subsection (a) who both qualifies for a decrease under subsection (a) and who has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps set forth in subsection (b). The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case. For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. *See* section 401(g)(2)(B) of Public Law 108–21.

**§3E1.1**

> If the government files such a motion, and the court in deciding whether to grant the motion also determines that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, the court should grant the motion.

**Background:** The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion, the actions listed above (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility.

Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps specified in subsection (b). Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction. Subsection (b) does not apply, however, to a defendant whose offense level is level 15 or lower prior to application of subsection (a). At offense level 15 or lower, the reduction in the guideline range provided by a 2-level decrease in offense level under subsection (a) (which is a greater proportional reduction in the guideline range than at higher offense levels due to the structure of the Sentencing Table) is adequate for the court to take into account the factors set forth in subsection (b) within the applicable guideline range.

Section 401(g) of Public Law 108–21 directly amended subsection (b), Application Note 6 (including adding the first sentence of the second paragraph of that application note), and the Background Commentary, effective April 30, 2003.

| | |
|---|---|
| *Historical Note* | Effective November 1, 1987. Amended effective January 15, 1988 (amendment 46); November 1, 1989 (amendment 258); November 1, 1990 (amendment 351); November 1, 1992 (amendment 459); April 30, 2003 (amendment 649); November 1, 2010 (amendments 746 and 747); November 1, 2013 (amendment 775); November 1, 2018 (amendment 810); November 1, 2023 (amendment 820). |

# SENTENCING TABLE
## (in months of imprisonment)

| | Offense Level | Criminal History Category (Criminal History Points) | | | | | |
|---|---|---|---|---|---|---|---|
| | | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
| Zone A | 1 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 |
| | 2 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 1–7 |
| | 3 | 0–6 | 0–6 | 0–6 | 0–6 | 2–8 | 3–9 |
| | 4 | 0–6 | 0–6 | 0–6 | 2–8 | 4–10 | 6–12 |
| | 5 | 0–6 | 0–6 | 1–7 | 4–10 | 6–12 | 9–15 |
| | 6 | 0–6 | 1–7 | 2–8 | 6–12 | 9–15 | 12–18 |
| | 7 | 0–6 | 2–8 | 4–10 | 8–14 | 12–18 | 15–21 |
| | 8 | 0–6 | 4–10 | 6–12 | 10–16 | 15–21 | 18–24 |
| Zone B | 9 | 4–10 | 6–12 | 8–14 | 12–18 | 18–24 | 21–27 |
| | 10 | 6–12 | 8–14 | 10–16 | 15–21 | 21–27 | 24–30 |
| | 11 | 8–14 | 10–16 | 12–18 | 18–24 | 24–30 | 27–33 |
| Zone C | 12 | 10–16 | 12–18 | 15–21 | 21–27 | 27–33 | 30–37 |
| | 13 | 12–18 | 15–21 | 18–24 | 24–30 | 30–37 | 33–41 |
| Zone D | 14 | 15–21 | 18–24 | 21–27 | 27–33 | 33–41 | 37–46 |
| | 15 | 18–24 | 21–27 | 24–30 | 30–37 | 37–46 | 41–51 |
| | 16 | 21–27 | 24–30 | 27–33 | 33–41 | 41–51 | 46–57 |
| | 17 | 24–30 | 27–33 | 30–37 | 37–46 | 46–57 | 51–63 |
| | 18 | 27–33 | 30–37 | 33–41 | 41–51 | 51–63 | 57–71 |
| | 19 | 30–37 | 33–41 | 37–46 | 46–57 | 57–71 | 63–78 |
| | 20 | 33–41 | 37–46 | 41–51 | 51–63 | 63–78 | 70–87 |
| | 21 | 37–46 | 41–51 | 46–57 | 57–71 | 70–87 | 77–96 |
| | 22 | 41–51 | 46–57 | 51–63 | 63–78 | 77–96 | 84–105 |
| | 23 | 46–57 | 51–63 | 57–71 | 70–87 | 84–105 | 92–115 |
| | 24 | 51–63 | 57–71 | 63–78 | 77–96 | 92–115 | 100–125 |
| | 25 | 57–71 | 63–78 | 70–87 | 84–105 | 100–125 | 110–137 |
| | 26 | 63–78 | 70–87 | 78–97 | 92–115 | 110–137 | 120–150 |
| | 27 | 70–87 | 78–97 | 87–108 | 100–125 | 120–150 | 130–162 |
| | 28 | 78–97 | 87–108 | 97–121 | 110–137 | 130–162 | 140–175 |
| | 29 | 87–108 | 97–121 | 108–135 | 121–151 | 140–175 | 151–188 |
| | 30 | 97–121 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 |
| | 31 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 |
| | 32 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 |
| | 33 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 |
| | 34 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 |
| | 35 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 |
| | 36 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 |
| | 37 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |
| | 38 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life | 360–life |
| | 39 | 262–327 | 292–365 | 324–405 | 360–life | 360–life | 360–life |
| | 40 | 292–365 | 324–405 | 360–life | 360–life | 360–life | 360–life |
| | 41 | 324–405 | 360–life | 360–life | 360–life | 360–life | 360–life |
| | 42 | 360–life | 360–life | 360–life | 360–life | 360–life | 360–life |
| | 43 | life | life | life | life | life | life |